**TRIEBWASSER & KATZ, a partnership consisting of Jonah Triebwasser and William Katz, Plaintiffs-Appellees,**

v.

**AMERICAN TELEPHONE & TELEGRAPH COMPANY, et al., Defendants-Appellants.**

**No. 987, Docket 76–7095.**

United States Court of Appeals, Second Circuit.

Argued May 3, 1976.
Decided May 17, 1976.

John W. Finley, Jr., New York City (Brashich, Finley & Postel, Michael Blinick, New York City, of counsel), for plaintiffs-appellees.

James W. Lamberton, New York City (Cleary, Gottlieb, Steen & Hamilton, Stephen L. Cohen, James B. McHugh, New York City, of counsel, George E. Ashley, New York City, Co-counsel for New York Tel. Co.), for defendants-appellants.

Before MULLIGAN and MESKILL, Circuit Judges, and PALMIERI, District Judge.*

MULLIGAN, Circuit Judge:

This is an appeal pursuant to 28 U.S.C. § 1292(a)(1) from an order of Hon. John M. Cannella, Judge of the United States District Court for the Southern District of New York, entered February 26, 1976, granting the motion of the plaintiffs Triebwasser and Katz ("Katz"), a licensed private investigative agency, for a preliminary mandatory injunction against the named defendants, American Telephone and Telegraph Company ("AT&T"), the New York Telephone Company ("Telco"), and the Reuben H. Donnelley Corporation ("Donnelley"). On the argument on appeal this court stayed the injunction pending disposition of this appeal and now reverses the order granting it.

On February 17, 1976 Katz filed a complaint seeking injunctive relief and one million dollars in damages against the defendants. Telco publishes the classified tele-

* Edmund L. Palmieri, United States District Judge, Southern District of New York, sitting by designation.

phone directories, commonly known as the Yellow Pages, in the New York metropolitan area; its parent corporation is AT&T and Donnelley is an advertising sales representative for the Yellow Pages. Plaintiff by order to show cause moved for a temporary restraining order and a preliminary injunction enjoining the defendants from refusing to accept Katz's advertisement for publication in the Yellow Pages. A hearing was held on February 23, 1976 with William Katz the only witness for the plaintiffs. Defendants offered no witnesses.

The facts reveal that Katz is a detective agency which commenced business in New York City on December 4, 1975 and which attempted to insert an advertisement in the Queens County Yellow Pages with the following prominent legend: "We can detect and remove unwanted and illegal electronic listening devices from your telephone, home or office." The defendants Donnelley and Telco refused and rejected the advertisement, because it did not comply with their internal standards for such advertising. More specifically, Telco stated that it was concerned with the privacy of communication and that so-called "debugging" advertisements are consistently rejected since large segments of the public will assume that those who have the capability to "debug" can also furnish wire tapping and eavesdropping services and equipment. Telco said it would publish the Katz advertisement without the debugging legend. This action prompted the complaint below, which urged as a first cause of action that the refusal of the defendants to publish the Katz advertisement constituted a conspiracy to restrain competition in violation of the Sherman Act, 15 U.S.C. § 1 et seq. The second cause of action alleges the same facts to constitute a deprivation of the first, fifth and fourteenth amendments guaranteeing free speech, due process of law, and equal protection of law. The third cause of action alleged the same facts to constitute a violation of various sections of the Penal Law and General Business Law of the State of New York. Judge Cannella's opinion

granting the preliminary injunction was addressed solely to the antitrust claim.

 The opinion of the District Court granting the relief requested was based on the familiar test of this circuit that a preliminary injunction will issue "only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sonesta Int'l Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973) (emphasis in original). It is equally familiar law that the granting of preliminary injunctive relief lies within the sound discretion of the District Court and will not be disturbed unless there is an abuse of that discretion. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–2568, 45 L.Ed.2d 648, 659–660 (1975), or unless there is a clear mistake of law, *414 Theater Corp. v. Murphy,* 499 F.2d 1155, 1159 (2d Cir. 1974); *Exxon Corp. v. City of New York,* 480 F.2d 460, 464 (2d Cir. 1973).

Here we hold that the court below committed a clear mistake of law and has abused its discretion in granting the preliminary injunction.

While making no finding regarding probable success on the merits, the court did find sufficiently serious questions going to the merits to make them a fair ground for litigation (although noting it was "hampered by the somewhat barren factual record produced by the plaintiffs"), and also found that the balance of hardships tipped decidedly in favor of the plaintiffs.

Although we express no opinion at this juncture as to the merits of any substantive antitrust issues, we think the appraisal of the court below that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, is a proper assessment of the issues presented by the pleadings.[1]

---

1. However, we cannot agree that the doctrine of "intracorporate conspiracy" insofar as

AT&T and its non-competing wholly owned subsidiary Telco are concerned is necessarily

■ Our difficulty, however, is with the finding that the balance of hardships tips decidedly in the plaintiff's favor. At the outset, we should note that this language of the second prong of the *Sonesta* test does not eliminate the basic obligation of the plaintiff to make a clear showing of the threat of irreparable harm. That is a fundamental and traditional requirement of all preliminary injunctive relief, see *Doran v. Salem Inn, Inc., supra,* 422 U.S. at 931, 95 S.Ct. at 2567, 45 L.Ed.2d at 659, since equity cannot intervene where there is an adequate remedy at law. E. g., *Atlas Life Ins. Co. v. W. I. Southern, Inc.,* 306 U.S. 563, 569, 59 S.Ct. 657, 660, 83 L.Ed. 987, 992 (1939); *Matthews v. Rodgers,* 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447, 451 (1932) (case involved injunction on collection of a state tax); *Oneida Indian Nation v. County of Oneida,* 464 F.2d 916, 922 (2d Cir. 1972), rev'd on other grounds, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974); *Porto Rico Tel. Co. v. Puerto Rico Communications Auth.,* 189 F.2d 39, 41 (1st Cir.), cert. denied, 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628 (1951) ("It is settled that a federal court may not grant the extraordinary equitable remedy of an injunction if the complaining party has a plain, adequate and complete remedy at law."); 7 J. Moore, Federal Practice ¶ 65.18[3], at 65–134, 65–136 & n. 18 (2d ed. 1975). Cf. Developments in the Law—Injunctions, 78 Harv.L.Rev. 994, 996, 1001–04 (1965). If the element of irreparable damage is prerequisite for relief where the plaintiff must show probable success on the merits, then *a fortiori* where the plaintiff establishes something less than

probable success as to the merits, need for proof of the threat of irreparable damage is even more pronounced. In sum, the balancing of hardships test of *Sonesta* necessarily includes the showing of irreparable harm.

■ In antitrust cases, the proposition requires no further elucidation since 15 U.S.C. § 26 explicitly requires for a preliminary injunction a showing "that the danger of irreparable loss or damage is immediate," and we have so held in a recent private antitrust case, *SCM Corp. v. Xerox Corp.,* 507 F.2d 358, 360 (2d Cir. 1974). The court below did not advert either to the statute or to the necessity of establishing the threat of irreparable harm. However it did find that the exclusion of the advertisement would result in harm to a fledgling business which would be "quite difficult to compute in terms of money damages." While the difficulty of ascertaining damages with certainty is a proper test of irreparable harm, *Danielson v. Local 275, Laborers Int'l Union,* 479 F.2d 1033, 1037 (2d Cir. 1973), we have also pointed out that in antitrust cases the courts have allowed the plaintiff a broad latitude in establishing proof of damages. *SCM Corp. v. Xerox Corp., supra,* 507 F.2d at 363. See *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 262–64, 66 S.Ct. 574, 578–579, 90 L.Ed. 652, 659–660 (1946); *Columbia Pictures Indus., Inc. v. American Broadcasting Companies, Inc.,* 501 F.2d 894 (2d Cir. 1974); *William Goldman Theatres, Inc. v. Loew's Inc.,* 69 F.Supp. 103, 105–06 (E.D.Pa.1946), aff'd, 164 F.2d 1021 (3d Cir.), cert. denied, 334 U.S. 811, 68 S.Ct. 1016, 92 L.Ed. 1742 (1948). Hence we cannot agree

applicable. See *International Railways of Central America v. United Brands Co.,* 532 F.2d 231, 240 & n. 19 (2d Cir. 1976) (where we expressly declined to decide that issue). However, it may be that Donnelley would provide an appropriate co-conspirator for section 1 purposes. See *Albrect v. Herald Co.,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968). Moreover, it is difficult to determine at this stage of the litigation precisely what section 1 theory of Sherman Act liability is being urged. If the plaintiffs can establish a joint boycott or concerted refusal to deal, which is a *per se* violation of the Act, see *Fashion Originators' Guild of America, Inc. v. FTC,* 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941); *International Rail-*

ways, *supra,* at 240, obviously the chance of success on the merits is enhanced. On the other hand, the defendants did not entirely reject Katz's advertising but would eliminate only the "debugging" legend; hence they may be able to establish that there are public policy considerations involving rights of privacy which justify their action, which is applicable to all such prospective advertisers. Therefore, it may be that some rule of reason approach should apply. See *America's Best Cinema Corp. v. Fort Wayne Newspapers, Inc.,* 347 F.Supp. 328, 333 (N.D.Ind.1972). There are also issues of the effect of the "boycott" on interstate commerce, which are fairly litigable.

that plaintiffs will not be able to establish their monetary damages with a reasonable degree of certainty.

Moreover, it is apparent that the plaintiffs have an obligation to mitigate their damages. The Yellow Pages are not the only advertising media available to Katz. While the court below accepted the Katz testimony that similar coverage would entail prohibitive costs (the Katz affidavit estimates the cost of alternative advertising at $2,400,000 per annum), there is no indication that the defendants are financially unable to respond in damages in the event judgment is eventually entered against them. We do not suggest of course that such an estimate is reasonable. We simply indicate that whatever reasonable costs are undertaken to secure comparable advertising in media not adverse to accepting the advertisement rejected here are obviously capable of proof and are therefore reparable.

▆ Finally, we should note that the normal function of the preliminary injunction is to maintain the status quo pending a full hearing on the merits. *SCM Corp. v. Xerox Corp., supra,* 507 F.2d at 361; *Checker Motors Corp. v. Chrysler Corp.,* 405 F.2d 319, 323 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969); 7 J. Moore, Federal Practice ¶ 65.04[1], at 65–36 & n. 3 (2d ed. 1975). The injunction granted below would in effect give the plaintiffs substantially the ultimate relief they seek, the publication of the debugging advertisement in the Yellow Pages, before there has been any trial of the issues and where the district court has not found that there has been a showing of probable success on the merits. Thus the preliminary injunction would give Katz an advantage not presently accorded to its competition.

For these reasons we reverse the order of the District Court.